Filed 11/6/20 P. v. Cappello CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK WILLIAM CAPPELLO,<br><br>    Defendant and Appellant. | A160144<br><br>(Sonoma County<br>Super. Ct. No. SCR630974) |

In 2019, we affirmed the judgment of conviction against defendant Mark William Cappello for three counts of special circumstances murder and one count each of first degree burglary, conspiracy to possess marijuana for sale and transport, and first degree residential robbery. (*People v. Mark William Cappello* (A148470, May 13, 2019) [nonpub. opn.] (*Cappello I*).) However, we remanded the matter to the trial court to consider whether to strike any or all of the firearm enhancements imposed under Penal Code section 12022.53 in light of the passage of Senate Bill No. 620 in 2018. (*Cappello I, supra,* at pp. 63-65.) After briefing and a hearing, the trial court declined to resentence defendant, and this appeal follows.

Defendant's court-appointed counsel filed a brief asking this court for an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436. Defendant, informed of his right to file supplemental briefing, filed a 30-page handwritten brief. We summarize defendant's contentions as we best

1

understand them and explain why they fail in this appeal. (*People v. Kelly* (2006) 40 Cal.4th 106, 121.) After our review of counsel's brief, defendant's submission and our independent review of the record, we find no errors or other issues requiring further briefing, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Offenses and Conviction*

The facts of this case are set forth at length in *Cappello I*, an opinion that runs to 65 pages, and we will not restate them here. As we wrote in *Cappello I*:

"Around 3:00 p.m. on February 5, 2013, Dylan Butler drove to his mother's cabin on Ross Station Road in Forestville looking for his brother, Raleigh Butler. The front door was open, and inside Dylan discovered three bodies in the back bedroom, including the body of his brother. The other two victims were Richard Lewin and Todd Klarkowski. Each victim died from a single gunshot to the head. The scene suggested the victims were killed while processing large amounts of marijuana for sale or transport. The victims were wearing latex gloves; marijuana and a FoodSaver vacuum sealing machine were found nearby; a duffel bag at the front door of the cabin contained nine one-pound bags of marijuana packed in turkey baster bags; and Butler had $8,600 in cash in his jacket pocket.

"The Sonoma County District Attorney charged Cappello, along with father and son Francis and Odin Dwyer, with three counts of murder and additional offenses. Cappello was alleged to have been the shooter, and Odin and Francis were charged as accessories. The Dwyers reached plea agreements with the prosecution, agreeing to plead no contest to various charges and to testify against Cappello. In exchange, Odin was promised a

sentence of 20 years, four months, and Francis was promised a sentence of eight years.[1]

"Cappello was tried before a jury on six charges: three counts of murder (Pen. Code, § 187, subd. (a); counts 1–3) with special circumstances and an allegation of personal discharge of a firearm (*id.*, § 12022.53, subd. (d)), first degree burglary (*id.*, § 459; count 4) with a firearm allegation (*id.*, § 12022.5, subd. (a)), conspiracy to commit possession of marijuana for sale and sale or transportation of marijuana (*id.*, § 182, subd. (a)(1), Health & Saf. Code, §§ 11359 and 11360, subd. (a); count 5), and first degree residential robbery of Butler (Pen. Code, § 211; count 6) with a firearm allegation (*id.*, § 12022.53, subd. (d))." (*Cappello I, supra,* at pp. 1-2, fn. omitted.)

As to the special circumstances, "[t]he district attorney alleged the murders were committed during the attempted commission of robbery and burglary, for financial gain, and by means of lying in wait, and Cappello committed multiple murders. (Pen. Code, § 190.2, subd. (a)(17), (1), (15), and (3).)" (*Cappello I, supra,* at p. 1-2, fn. 3.)

The jury found Cappello guilty as charged and found all the special circumstances and firearm enhancement allegations true. Cappello was sentenced to three consecutive terms of life without the possibility of parole,

---

[1] As we wrote in *Cappello I*, "Odin pleaded no contest to 15 counts—burglary, conspiracy to commit burglary, three counts of involuntary manslaughter, transportation of marijuana, processing marijuana, conspiracy to transport marijuana, possession of marijuana for sale, conspiracy to possess marijuana for sale, accessory to robbery, three counts of accessory to murder, and receipt of stolen property—and admitted firearm enhancement allegations. Francis pleaded no contest to transportation of marijuana, conspiracy to transport marijuana, possession of marijuana for sale, conspiracy to possess marijuana for sale, and accessory to murder and admitted firearm enhancements." (*Cappello I, supra,* at p. 2.)

3

plus 100 years to life in prison, plus a determinate sentence of six years, eight months.

*Appellate Decision Remanding in Light of Senate Bill No. 620*

As we wrote in *Cappello I* with regard to the firearm enhancements and the effect of Senate Bill No. 620 (S.B. 620):

"The jury found Cappello personally and intentionally discharged a firearm, proximately causing great bodily injury in the commission of counts 1 through 3 (murder) and count 6 (robbery). As a result, the trial court imposed four enhancements of 25 years under Penal Code section 12022.53, subdivision (d). At the time of sentencing, the firearm enhancements were mandatory. (See former Pen. Code, § 12022.53, added by Stats. 2010, ch. 711, § 5.)

"Effective January 1, 2018, however, Senate Bill No. 620 amended Penal Code section 12022.53, providing trial courts with discretion 'in the interest of justice pursuant to [Penal Code] Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section.' (Stats. 2017, ch. 682, § 2; Pen. Code, § 12022.53, subd. (h).)

"The parties agree the current version of Penal Code section 12022.53 applies retroactively to Cappello's case. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 424 [the discretion conferred by section 12022.53 applies retroactively to nonfinal judgments] (*McDaniels*).) Cappello asks us to remand the matter to the trial court to decide whether to strike any or all of the firearm enhancements, but the Attorney General argues remand is unnecessary because there is no possibility the trial court would exercise its discretion to strike any of the firearm enhancements given that the court

4

departed upward from the probation officer's recommendation and did not exercise its discretion to reduce the sentence where it could.[2]

"Although the trial court agreed with the prosecutor's recommendation in sentencing Cappello, it did not state that its intent was to impose the maximum possible sentence nor did it state it would never consider striking one of the mandatory firearm enhancements if it had discretion to do so. Therefore, in an abundance of caution, we conclude 'a remand is proper because the record contains no clear indication of an intent by the trial court not to strike one or more of the firearm enhancements.' (*McDaniels*, *supra*, 22 Cal.App.5th at pp. 427–428.) We express no opinion on how the court should exercise its discretion on remand." (*Cappello I, supra,* at pp. 63-65, fn. omitted.)

*Proceedings Regarding Resentencing on Remand*

On December 2, 2019, defendant, represented by his trial counsel, filed a request for resentencing and amended judgment pursuant to S.B. 620 to strike or dismiss the four enhancements that had been imposed under section 12022.53. The argument on the merits in support of the request was as

---

2 As we noted in *Cappello I*, "The probation officer recommended six years for count 6 (robbery), plus the mandatory 100 years to life for the four firearm enhancements, plus three *concurrent* LWOPs for counts 1 through 3 (special circumstances first degree murder). He recommended staying punishment for counts 4 (burglary) and 5 (conspiracy to possess marijuana) under Penal Code section 654. The prosecutor agreed that the burglary conviction (count 4) merged with the robbery (count 6), but he argued the conspiracy (count 5) was a different type of crime, and Penal Code section 654 should not apply, so Cappello should receive an additional 8 months (one-third the midterm) for count 5. He also asked for three *consecutive* LWOP terms. The trial court followed the prosecutor's recommendations. The prosecutor suggested three consecutive LWOP terms would recognize there were three murder victims in this case." (*Cappello I, supra,* at p. 64, fn. 43.)

follows: "Defendant Cappello respectfully suggests that the three consecutive LWOP terms imposed in this case are more than sufficient to serve the interests of justice and that the firearm enhancements are a redundancy the Court may choose to exercise its discretion to strike."

The district attorney filed an opposition to the request arguing, "Mark Cappello cruelly murdered three men. He did it by shooting each of them in the head, as they worked to package marijuana. Although they were all engaged in illegal activity, nothing about that mitigates the evil Cappello unleashed when he murdered them. He deserves all the punishment that he received when initially sentenced. The People ask this Court to deny the request to strike or dismiss the firearm use allegations and leave the defendant's sentence intact."

On February 25, 2020, the trial court (Hon. Robert LaForge, who had presided at the trial) held a hearing to consider whether to strike the firearm enhancements. Defendant was present at the hearing and represented by counsel.

Defendant interjected that he "would like to address the Court, but it doesn't matter if it is after the resentencing or before." The court asked whether defendant had spoken to his counsel first, and defense counsel stated that he did not know what defendant wished to say, but that defendant did wish to address the court,

With the court's permission, defendant continued: "What I'm addressing is really to you first is that you knew Mr. Charles Wyatt[3] to be

---

[3] Charles Wyatt was a defense witness at the trial. As we described in *Cappello I*, "Charles Wyatt met Odin [Dwyer, Cappello's codefendant] around February 2013 in the Sonoma County Jail when they were housed in the same module. According to Wyatt, Odin told him 'he was the guy that, in his words, whacked the three victims.' Odin said he and Francis [Dwyer, another

6

. . . a credible witness when you were a prosecuting attorney and you used them in a trial. And you allowed the prosecution to present false testimony about Mr. Charles Wyatt during that—" At this point, the district attorney objected that the statement was "beyond anything having to do with these motions," referring to the remand for sentencing and, apparently, a motion for return of property that was also on calendar.

The trial court responded: "Mr. Cappello, I know you have other legal issues pending as far as writs and things, I'm not involved in any of those of course you probably know. This issue that we are dealing with right now is just an issue sent back from the Court of Appeal[] based on a change in the law for me to decide after hearing argument from [defense counsel] Mr. Stogner as well as [prosecutor] Mr. Maddock if I'm going to exercise my discretion and strike the firearm enhancement."

Defendant acknowledged, "Right. I was just wondering why you would —because you knew—I mean it is hard for me to understand that you knew that Mr. Charles Wyatt was a credible witness."

Once again the district attorney objected that the statements were "totally improper" and moved to strike.

Without waiting for the trial court to respond, defendant stated, "I wanted to put that on the record because the prosecution knew that they willfully allowed false testimony to be presented during the trial and at the closing."

---

codefendant] planned to commit a robbery and Cappello did not know about their plan. Odin told Wyatt that Cappello was at the hotel at the time of the killings." (*Cappello I, supra,* at p. 12.) Wyatt's testimony, and the appellate issues concerning it, are discussed in at length in *Cappello I, supra,* at pages 12, 53-62.

The trial court responded, "As far as anything else with Mr. Wyatt, I'm not going to address those issues.  I am going to address the issues with the firearm enhancement."  The trial court called on counsel for defendant to argue the pending motion for resentencing.

Counsel for defendant stated, "We would ask the Court to strike the firearm enhancements, 12022.53(d) and 12022.53(b).  And we are prepared to submit the issue with the suggestion that the firearm enhancements are unnecessary to the full execution of a just sentence and to some degree are duplicative and the rendering of punishment excessive.  I'll submit it."

The trial court stated that "after considering all the evidence as well as the papers filed by Mr. Stogner and the People" that it was not going to exercise its discretion to strike the firearm enhancements.

Defendant asked to speak again, and this discussion ensued:

"THE COURT:  Not on the issue we were talking about.

"THE DEFENDANT:  Not on that issue.

"THE COURT:  Is it another issue similar?  I may stop you.

"THE DEFENDANT: You might, all right.  The unsworn affidavit to the arrest warrant for my arrest, I have an unsworn affidavit by the state to—

"MR. MADDOCK:  I have to object, Your Honor.

"THE COURT:  I get that, Mr. Maddock.  I know the People are objecting.  Go ahead.

"THE DEFENDANT:  What I'm asking is that you would look at this and tell me this was a properly sworn, which it isn't, a sworn affidavit to even pursue an arrest warrant.  That was overlooked by Mr. Stogner and I think the reason why it was overlooked by Your Honor is because of the way they presented it to you.  They actually put another affidavit in front of that one

that was done by Traci Carrillo, but that was for my property. It wasn't for my arrest warrant.

"THE COURT: I'm not going to look at that. I understand the issue. You are going to have to talk to your appellate issue [sic] about those issues. Or you can certainly talk to Mr. Stogner, I'm not going to in any way look at it or rule on it. . . . With your federal issues I don't know if you have a habeas in state court, federal court or where it currently stand [sic]. Like I said, since I was a trial judge I can pretty much not hear any of that stuff. It is heard from either the appellate court or a different court. So all I can do is encourage you to show that to your appellate attorney and see what happens with that, okay?

"THE DEFENDANT: Yes, sir. Thank you."

This appeal followed.

## DISCUSSION

This is an appeal from the court's order denying Cappello's request to strike the firearm enhancements "under the current sentencing scheme." (*Cappello I, supra,* at p. 1.) For that reason, this appeal has a limited scope. We have already issued a comprehensive opinion in *Cappello I*, which addressed the issues raised by defendant in his direct appeal of his conviction for the underlying crimes.

We have reviewed the record on this limited appeal for any arguable issues. We find there are none. The trial court understood it had discretion to strike the enhancements under the change in the law made by S.B. 620 but chose not to exercise its discretion to do so based on evidentiary record.

In reaching this conclusion, we have also considered the contentions in defendant's supplemental brief and conclude they all fail for purposes of this appeal.

9

As we have mentioned, this appeal is limited in scope. In *Cappello I*, we *affirmed* the convictions and only remanded for the limited purpose of potential resentencing under the new law. (*Cappello I, supra,* at p. 65.) Thus, only errors relating to the resentencing on remand "may be considered in this subsequent appeal." (*People v. Deere* (1991) 53 Cal.3d 705, 713 [rejecting claim of ineffective assistance of counsel in the guilt phase in subsequent appeal from limited remand on penalty phase].)

Here, almost all of defendant's claims relate to alleged error in his underlying criminal trial, but this appeal is not an opportunity to reargue issues about the criminal trial that were already raised in *Cappello I*, or to raise new arguments that could have been raised in *Cappello I*. Nor is this limited appeal an opportunity to argue that our conclusions in *Cappello I* were in error. Our decision in *Cappello I* is final, and the Supreme Court denied defendant's petition for review. (See *People v. Cappello* (S256264), review denied Aug. 21, 2019.) Almost all of defendant's claims relate to perceived errors in the criminal trial,[4] but such claims cannot be raised in this appeal.

Defendant's only contention that arguably raises a claim related to the remand is his reference that "Judge LaForge failure to recuse [at trial] was not harmless error it was detrimental [sic]. Judge LaForge should not have

---

[4] For example, defendant discusses at length that Wyatt was not a credible witness for various reasons, he refers to possible Brady error, he asserts his trial attorney lacked experience, he argues the court improperly admitted character evidence, and so on. All these issues either were raised in *Cappello I* or could have been raised in *Cappello I*. To the extent defendant claims he received ineffective assistance of appellate counsel in his direct appeal, this appeal of the trial court's order on remand is not the appropriate vehicle for raising that claim.

tried-presided my trial and *thus should not preside the resentensing* [sic]."
(Italics added.)

This contention that Judge LaForge should not have presided at the resentencing hearing fails because it was forfeited. At the resentencing hearing, defendant's attorney did not seek to disqualify the trial judge from conducting the resentencing hearing on any ground. Moreover, the contention is premised on Judge LaForge's actions as the trial judge that preceded the resentencing. But in *Cappello I*, no issue was raised on appeal that the trial judge should have recused himself from presiding at the trial, or that he was biased or should have been disqualified for cause.[5] Nor was there any suggestion in defendant's briefs in *Cappello I* that the sought-after remand for resentencing should be heard by a different trial judge. Having failed to raise the objection, defendant may not raise it for the first time on appeal. (See *People v. Johnson* (2015) 60 Cal.4th 966, 978-979.)

## DISPOSITION

The scope of the resentencing hearing and thus the issues before us in this appeal are narrow. We conclude there are no arguable issues within the meaning of *People v. Wende, supra*, 25 Cal.3d 436.

The judgment is affirmed.

---

[5] A disqualification for cause under Code of Civil Procedure section 170.1 must be made "at the earliest practicable opportunity after the discovery of the facts constituting the ground for disqualification." (Code Civ. Proc., § 170.3, subd. (c)(1).) If the challenge for cause is denied, the defendant's recourse is to file a petition for writ of mandate within 10 calendar days of service of written notice of entry of order. (Code Civ. Proc., § 170.3, subd. (d) ["[t]he determination of the question of the disqualification of a judge is not an appealable order"].)

.

_____
Miller, J.

WE CONCUR:


_____
Kline, P.J.


_____
Stewart, J.


A160144, *People v. Cappello*